IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LEO JACOB DORBAD,

    Petitioner,

v.                                          CASE NO. 1:13-cv-81-MP-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by fling a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his February 2010 jury-trial conviction in Alachua County of second-degree manslaughter, for which he received a life sentence. ECF No. 1. The Respondent filed a response to the merits of the Petition, ECF No. 12, and Petitioner filed a reply, ECF No. 15. Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

### I. State-Court Proceedings

The procedural history of this case is summarized in the Response,

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

and Petitioner does not dispute the accuracy of that summary.  *See* ECF No. 12, ECF No. 15.

This was Petitioner's third trial on charges stemming from the shooting death of Dawn Luciano.  His first trial, on charges of first degree murder, resulted in a mistrial due to a deadlocked jury.  ECF No. 12-1 at 241.  Petitioner was found guilty of second degree murder following a retrial, but the First District Court of Appeal reversed and remanded for a new trial based on evidentiary errors.  ECF No. 12-2 at 42-51.  Petitioner was again convicted of second degree murder on February 5, 2010.  *Id*. at 180.  Petitioner's conviction was affirmed *per curiam* without written opinion on July 12, 2011.  *Dorbad v. State*, 66 So.3d 942 (Fla. 1st DCA 2011).

On October 17, 2011, Petitioner file a *pro se* postconviction motion pursuant to Fla. R. Crim. P. 3.850.  ECF No. 12 Exh. W at 1-24.  The trial court summarily denied relief on March 23, 2010.  *Id*. at 78-273.  The First DCA affirmed *per curiam* without written opinion on August 3, 2012.  *Id*. Exh. Z; *Dorbad v. State*, 96 So.3d 886 (Fla. 1st DCA 2012).

The instant federal habeas corpus petition, which Respondent concedes is timely, followed.  Petitioner asserts three grounds for habeas corpus relief: (1) the evidence was insufficient to find him guilty such that the trial court erred in denying his motion for judgment of acquittal; (2) the

trial court erred in admitting the statement of a witness that Petitioner and the victim had a "lover's quarrel" prior to the shooting; and (3) trial counsel was ineffective for failing to afford Petitioner the opportunity to decide whether to submit to a polygraph.  ECF No. 1.

## II.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* ___ U.S. ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of

---

[2] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

### III.  Discussion

#### A.  *Sufficiency of the Evidence*

When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  As the Eleventh Circuit has explained:

> Faced with a record of historical facts that supports conflicting

> inferences, we must presume that the jury resolved such conflicts in favor of the prosecution, and we defer to the jury's judgment as to the weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir.1987). The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief. *Id*.

*Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004); *see Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]").  "In determining whether the facts of a particular case satisfy the *Jackson* standard, it is necessary to refer to the essential elements of the crimes as defined by state law."  *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations omitted).

In this case, the essential elements of the crime of second degree murder were explained to the jury at Petitioner's trial.  The trial court instructed the jury that in order to find Petitioner guilty of second degree murder, the State had to prove the following elements beyond a reasonable doubt: (1) the victim, Dawn Luciano, is dead; (2) the death was caused by the criminal act of the defendant; (3) there was an unlawful killing of the victim by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.  *See* ECF

No. 13-4 at 174 (jury instructions).  The court further instructed the jury that an act is "imminently dangerous to another and demonstrating a depraved mind if it is an act or series of acts that a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and is done from ill will, hatred, spite, or an evil intent, and is of such a nature that the act itself indicates an indifference to human life." *Id*. at 174-75.  These instructions track the Florida Standard Jury Instruction (Criminal) 7.4 (2015).  *See also* Fla. Stat. § 782.04(2).

 The Court has reviewed the evidence adduced at trial, as summarized in the Response.  *See* ECF No. 12 at 8-22; ECF 13-2 at 4 through 13-4 at 219 (trial transcript).  Petitioner's housemate, Dawn Luciano, was shot in the face at close range in her bedroom in Petitioner's home on the night of June 15, 2016.  A 911 call was received from Petitioner's land line at 10:39 p.m. that was abandoned at pickup.  A call was then received from a different number; the caller inquired whether Petitioner's location was within the jurisdiction of the City or the County.  ECF No. 13-2 at 52-56.

 The parties stipulated that Petitioner made a 911 call at 10:41 p.m. from the land line in his home and stipulated that Petitioner's voice was on a recording of the call.  ECF No. 12-2 at 156.  Petitioner requested an

ambulance and stated that he "went in there with the gun. The gun went off. And I hit her in the head. . . . . I pulled the goddamn trigger." Petitioner identified the victim and had further dialogue with the operator regarding whether the victim was breathing and stated that he had tried blowing in her mouth but did not want to attempt further CPR. ECF No. 13-2 at 63-65.

Luciano was dead when the responders arrived. Fire rescue officer Lt. Melnick testified that Petitioner asked whether the victim was going to be okay, and was calm and neither appeared upset nor excited. He was smoking a cigarette. *Id*. at 90-94. Lt. Rumbaught testified that Petitioner was outside the home leaning on a porch rail smoking a cigarette. He made a "vague inquiry" as to how the victim was doing and Rumbaught described his demeanor as "nonchalant." *Id*. at 103-04.

The victim was lying on a bed in her room wearing only a t-shirt. An unused, open condom was on the bed next to her; the wrapper was on the nightstand by her body. *Id*. at 141, 146. A Smith & Wesson .357 magnum double action revolver was recovered from the bed in Petitioner's bedroom, but appeared to have been wiped clean. ECF No. 13-3 at 17.

Police officers arrived and initially made contact with Petitioner who was in the kitchen entrance of the hallway. He was wiping his hands on

Case 1:13-cv-00081-MP-GRJ   Document 20   Filed 08/08/16   Page 9 of 16

Page 9 of 16

paper toweling, and indicated that the victim was in the back bedroom of the house. Petitioner's demeanor was described by several officers as calm and matter of fact. He told officers where to find the gun. ECF No. 13-2 at 300-01; ECF No. 13–3 at 3-4.

With regard to the circumstances prior to the shooting, the evidence established that Petitioner and Luciano had a social relationship and had been out for drinks earlier in the day before the shooting. They also had been out to dinner with Desiree Dorbad. After returning home, Nick Kratz arrived. Luciano and Kratz went to the living room to watch TV. Desiree Dorbad testified that they may have been cuddling. The four then went to an outside porch. Desiree had plans to go bowling with Petitioner and her brother. She invited Luciano, but Luciano decided to stay home. Desiree left for the bowling alley around 10:15. Petitioner was tired and did not go. ECF No. 13-2 at 174-83.

Nick Kratz testified that after Desiree left the house he believed that he and Luciano were alone. They went to Luciano's bedroom. Luciano was applying lotion to her legs and Kratz started to leave the room to smoke a cigarette. As he opened Luciano's bedroom door, Petitioner was in the doorway yelling at Luciano. Luciano yelled back at Petitioner "What are you doing? What's going on?" She seemed surprised. Petitioner's

demeanor was "Angry as – Very angry. . . . jealous and angry.  Very mad, you know."  Kratz testified that he did not know the basis of Luciano's and Petitioner's relationship.  Kratz left, and did not see Luciano alive again.  He testified that he did not call 911 because he would not assume something like that would happen, and he "just thought I was in the middle of some lover's quarrel or something I didn't know about."  ECF No. 13-2 at 204-10.

At the conclusion of the State's case, which included extensive additional testimony from law enforcement officers and forensic evidence, Petitioner moved for judgment of acquittal, arguing that nothing explained the manner in which the firearm was discharged and the state had not established his state of mind and had failed to rebut his reasonable hypothesis of innocence that the shooting was accidental.  The court denied the motion, finding that there was direct evidence that Petitioner was angry at Luciano and yelling at her, regardless of the reason, and that the evidence showed Petitioner had "tremendous ill will" for Luciano.  The court also found that Petitioner's behavior was inconsistent with having just effected the death of a close friend, and that he took the time to wipe down the gun rather than calling 911 immediately.  ECF No. 13-3 at 176-208.

Viewing the evidence in the light most favorable to the prosecution,

as this Court on habeas corpus review is required to do, it is clear that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The motion for judgment of acquittal focused primarily on the element of ill will, and the trial court determined that there was direct evidence of Petitioner's ill will towards Luciano in the form of his actions toward her which reflected such rage that Nick Kratz left the scene. ECF No. 13-13 at 201. The court found that the evidence of the intensity of the confrontation between Luciano and Petitioner and the circumstances of her death – found nearly nude on her bed and shot at a very close range – were sufficient for the jury to infer ill will apart from any testimony regarding the reason for Petitioner's anger by Nick Kratz. *Id*. at 202-03. Petitioner has failed to show that state court's rejection of this claim was contrary to, or an unreasonable application of, federal law.

### B.  Trial Court's Evidentiary Ruling

Petitioner contends that the trial court abused its discretion and committed reversible error by allowing Nick Kratz to testify regarding his opinion that Petitioner and Luciano had a "lover's quarrel," thereby depriving Petitioner of a fair trial. ECF No. 1. Respondent contends that this issue is not a cognizable federal habeas corpus claim and lacks merit. ECF No. 12.

A state trial court's evidentiary rulings do not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial. *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998). A Petitioner must show that the ruling was more than merely erroneous; it must have had "'[a] substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

The trial court determined that the defense's focus on Nick Kratz's comment about a "lover's quarrel" was "overplayed . . . in terms of its significance in this case." ECF No. 13-3 at 201. The court stated that "it's not accurate to say that the evidence for which a jury can view this case hangs in the balance on one comment by Nick Kratz. That is totally inaccurate. It relies upon those other factors that are in evidence. And the jury can make an inference from those and do as they will with that." *Id.* at 203. Those other factors, as noted above, included Kratz's own testimony that he did not know the basis of Petitioner's and Luciano's relationship and other evidence, including the state of Luciano's body, Petitioner's rage toward her prior to the shooting, and the very close range of the shooting, from which the jury could infer the essential elements of the crime. Therefore, viewing the record as a whole, there is no possibility that

admission of Nick Kratz's "lover's quarrel" comment, even if erroneous, had a substantial and injurious effect or influence on the jury's verdict. This claim provides no basis for federal habeas corpus relief.

### C.  Ineffective Assistance of Counsel

Petitioner contends that is trial counsel was ineffective for failing to afford him the opportunity to decide if he wanted to submit to a stipulated polygraph agreement.  ECF No. 1.

In rejecting this claim on postconviction review, the state court applied *Strickland* and found that his trial counsel neither performed deficiently nor was Petitioner prejudiced in connection with counsel's performance.  The court explained that Petitioner did not take a polygraph, did not ask counsel about taking a polygraph, and did not allege that he was misadvised by counsel regarding the admissibility of a stipulated polygraph examination.  The court found that Petitioner's claim was based on "speculation and conjecture" because it assumed that the results of a polygraph would have been favorable to him.  The court found that the evidence of Petitioner's guilt was overwhelming, and that Petitioner had prevented his counsel from arguing for a verdict other than "not guilty," despite having presented expert witness testimony that the killing was an accident.  The court noted that at no time did Petitioner take responsibility

for killing Luciano and, thus, even if Petitioner had taken a polygraph and passed it and the results had been admitted, the outcome of the trial would not have been affected given the circumstances of the killing and Petitioner's explicit directions to counsel not to ask the jury to consider a verdict for the lesser offense of manslaughter. ECF No. 13-5 at 174-77; *see* ECF No. 13-6 at 66-67.

Petitioner points to nothing in the record that supports his assertion that counsel was ineffective for failing to give him an opportunity to decide whether to enter into a stipulated polygraph agreement. A review of the record supports a conclusion that Petitioner's defense theory that the killing was an accident was fully developed by counsel, as the state court found, and Petitioner testified at trial in support of this defense. *See* ECF No. 13-9-37. On this record, Petitioner has shown no error in the state court's finding that this claim is based wholly on speculation and conjecture and fails both prongs of the *Strickland* test. The undersigned therefore concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### IV. <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

### V. <u>Conclusion</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF

No. 1, should be **DENIED** and a COA should be **DENIED.**

  **IN CHAMBERS** this 8th day of August 2016.

        *s/ Gary R. Jones*
        GARY R. JONES
        United States Magistrate Judge


### NOTICE TO THE PARTIES

  **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.